CIRCUIT COURT FOR MULTNOMAH COUNTY, JUNE TERM, 1871.

## BEN. HOLLADAY AND C. TEMPLE EMMET, *v.* S. G. ELLIOTT *et al.*

DISSOLUTION OF PARTNERSHIP.—ACCOUNTING.—If a partner being without
fault, can show that his adversary has violated the term of the partner-
ship contract, and abused the trust with which, as a partner, he was
clothed, and that he has partnership assets which he has not accounted
for, this entitles such partner to an accounting. In pleading it is only
necessary for a party, whether plaintiff or defendant, to state the facts
that constitute his cause of action or his defense.

AMENDMENT.—If a proposed amendment to a pleading sets up only a cause of
action or of defense that existed at the filing of the former pleading, it
devolves upon the party asking the amendment to show a reasonable
excuse for the delay.

IDEM.—SUPPLEMENTARY ANSWER.—There is a clear distinction between a sup-
plementary answer and an amendment that sets up a defense which was
in existence at the time of the original answer.

DUTY OF COUNSEL.—Where counsel had appeared and subscribed the original
answer, and the excuse was made that the defendant had no means to
secure the aid of counsel: *It was held,* that the law will not tolerate the
position that counsel can or will place themselves on the record as such,
and afterwards permit this excuse to be true in point of fact.

THIS is a suit for the dissolution of partnership, and the
answer filed consists of denials of the allegations of the
complainants.

The defendant, S. G. Elliott, moves the circuit judge at
chambers, for an order granting leave to file an amendment
answer in the nature of a cross-bill, the cause being before
a referee for hearing.

*Mitchell & Dolph,* for the plaintiff in opposition to the
motion, make the following points of objection:

1st. The judge at chambers is not authorized to hear the
motion.

2d. The case is referred and an amendment cannot be
regularly ordered unless the case is ordered into court.

3d. The statute does not authorize such an amendment
after the trial has commenced.

4th. All material matters now proposed to be set up were
known to the defendant when the answer was filed, or at

least, before the case was referred, and the motion comes too late.

5th. The same matters are already set up in other suits pending between the same parties; namely, in one suit in this court, in one suit in the United States circuit court for the district of Oregon, and in one suit in the fifteenth district court of the state of California.

*Messrs. Patterson & Felton* and *Judge Shattuck*, for the defendant, claim that the circumstances justify the application and excuse the delay. The principal grounds being,

1st. The leading facts upon which the right to affirmative relief is based, came to the knowledge of the defendant recently.

2d. The defendant was absent from the state when the answer was filed.

3d. The defendant was, until recently, laboring under too great a financial embarrassment to be able to secure the services of counsel.

The motion being argued and submitted upon the defendant's affidavit, and the facts that appear in the pleadings, was taken under advisement, and the following opinion was filed.

UPTON, J. The cause is submitted on the defendant's motion for leave to file an amended answer in the nature of a cross-bill, for the purpose of bringing before the court for investigation diverse transactions and contracts between the plaintiff and other persons and corporations not heretofore made parties to this suit, which transactions are alleged to be in fraud of the defendant, and for the purpose of setting aside certain of those contracts, and of compelling the plaintiff to account.

In order to arrive at a clear understanding of the facts upon which counsel rest their arguments, I have attempted to arrange the more prominent transactions out of which the controversy has arisen, in order of their respective dates.

It appears from the pleadings that the plaintiff, Emmet, and the defendant, Elliott, were acquaintances, or at least had business relations, as early as 1866. On the third of

September of that year, they joined with others in a written proposition to certain citizens of Oregon, in regard to securing stock in a railroad corporation to be organized in this State.

On the twentieth of March, 1867, Albert J. Cook made Mr. Elliott his attorney in fact.

On the twenty-second of April, 1867, The Oregon Central Railroad Co. was incorporated, and on the same day that corporation contracted with A. J. Cook for the construction, by him, of 150 miles of railroad.

On the second of May, 1867, A. J. Cook made a written assignment of this contract to the defendant, Elliott.

On the twelfth of May, 1867, The Oregon Central Railroad Co. contracted with a firm called A. J. Cook & Co., that the firm would construct 210 miles of railroad. In each case it was provided that the contractor should receive, as compensation, certain bonds to be secured by mortgage on the proposed railroad; and in the second contract it was provided that the contractor should also receive certain stock of The Oregon Central Railroad Co. Some of the bonds were delivered by The Oregon Central Railroad Co., to A. J. Cook & Co. On the twelfth of September, 1868, the plaintiffs and the defendant, Elliott, formed a partnership under the firm name of Ben. Holladay & Co., for the purpose of equipping and operating one or more railroads in the state of Oregon, and the states and territories adjacent thereto. This firm, at its formation, succeeded to the contracts and the assets of A. J. Cook & Co., and entered upon the work of building the line of railroad, the defendant, Elliott, being superintendent of construction by the terms of the contract of partnership. On the seventeenth of October, 1868, the legislature of Oregon, designated The Oregon Central Railroad Co. as the company entitled to certain lands granted by congress. On the fourth of October, 1869, the plaintiff, Holladay, employed a new superintendent, and gave Mr. Elliott notice that he, Elliott, was discharged—Mr. Holladay claiming in this suit that Mr. Elliott had been guilty of fraud in procuring the formation of the partnership firm of Ben. Holladay & Co.; that he was in-

competent to superintend the work, and that he had been guilty of breach of the contract of partnership; Mr. Holladay, claiming to act in conjunction with Mr. Emmet, assumed control of the work of constructing the railroad. On the tenth of October, 1869, Mr. Holladay published a notice in the name of Ben. Holladay & Co., that Mr. Elliott was not authorized to make contracts on behalf of Ben. Holladay & Co.

About this time, Mr. Elliott commenced a proceeding in this court against the plaintiffs, which was dismissed on his motion, on December 20, 1869.

On November 4th, 1869, the plaintiffs commenced this suit, and the amended complaint was filed on the following day.

About this time Mr. Elliott left the state of Oregon, not being served with process, but knowing of the pendency of this suit; and on Nov. 23, 1869, publication of the summons was made.

About this time Mr. Holladay, using his own notes, or those of himself and friends, or those of Ben. Holladay & Co., borrowed about $800,000 to $1,000,000, pledging the bonds of the Oregon Central Railroad Co., which had been obtained of A. J. Cook & Co., as collateral security, out of which loan he applied enough to his own private account to satisfy all the advances he had made in the business of Ben. Holladay & Co.

December 20th, 1869, Mr. Elliott, on his own motion, dismissed his proceedings in this court against Holladay and Emmet.

On February 14th, 1870, the plaintiffs filed in this cause proof of service of summons, by publication, on the defendant Elliott.

On March 14th, 1870, the defendant Elliott filed his answer in this cause.

On March 16th, 1870, a corporation was formed under the name of the Oregon and California R. R. Co.

On March 26th, 1870, the Directors of the Oregon and California Railroad Company passed a resolution proposing to purchase from the Oregon Central R. R. Co., all its

property; and Mr. Holladay, as president of the first named company, communicated the proposition to the latter company.

On March 29th, 1870, the Oregon Central R. R. Co. made and delivered a writing, under seal of the corporation, purporting to convey all its property to the Oregon and California R. R. Co.

On April 11th, 1870, the replication was filed in this cause.

On April 15th, 1870, the Oregon and California R. R. Co. mortgaged its road to trustees, to secure its bonds to the amount of $30,000 per mile. And at the same time executed as further security a deed of trust conveying its lands to the same trustees.

About this time, or before, the defendant Holladay made arrangements to take up the obligations given for the $800,000 or $1,000,000, before mentioned, and to withdraw the bonds of the Oregon Central R. R. Co.; and he surrendered the said bonds to that company to be cancelled, or otherwise disposed of. And about this time the Oregon and California R. R. Co., Holladay being president and owning a majority of its stock, sold $3,750,000 of its bonds at 60 cents on the dollar, obtained a portion of the proceeds, and made arrangements to receive more from time to time.

On June 24th, 1870, Mr. Elliott commenced a suit in this court against these plaintiffs charging them with confederating together, in violation of the partnership articles of the firm of Ben. Holladay & Co., for the purpose of rendering valueless his interest in said firm, estimating his interest at $7,000,000. And charging them with having for that purpose deposed him from his position as superintendent, assumed the control of the affairs and assets of Ben. Holladay & Co., cancelled the contract for construction, and conspired to dissolve the old company and to form a new one; with having transferred the interest of the said Elliott to the new company, and with threatening to sell the bonds of the new company.

July 5th, 1870, a motion was made in the last named cause to make the complaint more specific.

On November 23d, 1870, the parties stipulated in this cause that each should have a six months' time to take evidence.

In December, 1870, Mr. Elliott commenced a suit in the fifteenth district court of the state of California in relation to the same subject matter, and including these plaintiffs as defendants, which suit is pending.

In December, 1870, the cause was by consent referred for trial of all the issues.

In May, 1871, a suit was commenced by Mr. Elliott in the United States circuit court for the district of Oregon, making the Oregon Central R. R. Co. and the Oregon and California R. R. Co. defendants.

Several matters touching the proceedings in this cause, and occurring since the seventeenth of May, 1871, have been alluded to.

The six months in which to take testimony alluded to in the stipulation, expired on the twenty-third of May, 1871, but by consent, or by order of the referee, the time has been prolonged, and the taking of testimony is not fully at an end.

The plaintiffs had introduced their evidence and rested, before this motion was made.

The defendant and two of his counsel were at San Francisco, expecting to leave by the steamer advertised to leave on the seventeenth day of May, but they were unexpectedly delayed, and did not arrive here until the plaintiffs had closed their testimony.

The affidavits and exhibits filed upon the hearing of the motion, show in detail the mode in which the transactions above referred to were effected.

With the understanding of the facts, I have considered the reasons presented for and against the motion to amend.

The question whether this motion can be heard at chambers becomes unimportant, since the term has commenced and the court is now in session.

The point that the referee should first be required to report the case to the court, is a question of practice that I do not find decided upon authority, and I pass it upon

similar grounds. If the motion depends upon either or both of those grounds, upon its being overruled the application can be immediately made in form.

Passing for the present, also, the question whether the application is within the letter of ss. 94 to 104 of the Code, I propose to consider first to what extent the amendment presents matter occurring since the former answer, and what material facts are presented that have come to the knowledge of the defendant since he commenced his suit on the twenty-fourth of June last. One of the objects sought in this suit, as disclosed by the complaint, and as proposed by the amendment, is an accounting. Of course the gist of the controversy is the determination of the issues in regard to breach of the contract of partnership; but an accounting, although secondary, is one of the objects. It is therefore necessary to consider what will entitle a party to an accounting?

If either of the partners, being without fault, can show that his adversary has violated the terms of the partnership contract, and abused the trust with which as a partner he was clothed, and that he has partnership assets that he has not accounted for, that showing entitles such partner to an accounting.

It is only necessary for a party, either plaintiff or defendant, to state the facts that constitute his cause of action or defense. (*McDonald* v. *Bear River & A. W. & M. Co.*, 15 Cal. 145; *Green* v. *Palmer*, 15 Id. 411.) He is not required to state the evidence that proves those facts, nor is it necessary, to entitle him to an accounting and to the benefits of the accounting, that he should set out a detailed history of his adversary's dealings.

Whether we are examining the facts actually occurring since the last answer, or considering those that are newly discovered, we are confined to such as it is necessary to plead.

Those that are in this sense new, as distinguished from newly discovered, are such as occurred after March 14, 1870.

There is a clear distinction between a proposition to file a supplementary answer, to enable party to obtain a

more full and adequate remedy, or to set up as a distinct defense some new and distinct occurrence that of itself amounts to a defense or cause of suit, and a proposition to set up a defense or cause of suit that was in existence at the time of the former answer. This distinction is important, and should not be overlooked if we would arrive at correct conclusions.

Section 105 of the Code provides for cases of the former class, and the sections from 94 to 104 apply to the latter. These provisions of the Code, so far as they are applicable to this motion, are declaratory of the law as it existed before the Code was enacted, and I think the same rules would be in force if the subject had not been mentioned in the Code. Facts of the former class, when material and necessary to the proper determination of the case already made by the pleadings, are admissible when presented properly, from the bare circumstance of the facts having transpired since the party had an opportunity to plead. But defenses or causes of suit of the latter class the court has no right to admit, unless the neglect or delay is shown to be excusable.

The real question to be determined, is whether the defendant ought to be allowed, now, to file an answer setting up affirmative allegations in the nature of a cross-bill. Under the facts presented upon this motion I have no hesitation in drawing a line of distinction between those facts that had come to the defendant's knowledge at the time he filed his complaint, June 24, 1870, and those that have been disclosed in the course of taking depositions during the last month.

If this amendment is a proposition to set up a defense or cause of suit that was in existence at the time of the former answer, it of course devolves on the defendant to show a reasonable excuse for the delay. And I think there is no doubt but that if it was in existence, and known to the defendant, as early as June 24, 1870, the intervening time and the action since taken in the case places him in the same attitude.

If the distinction first mentioned is sound, those subsequent transactions, the proof of which would only tend to

give a more adequate remedy, but which are not necessary to constitute the defendant's cause of suit, ought not to determine the question whether the delay in setting up the main subject-matter of the cross-suit is excusable.

By those facts set forth in the proposed amendment that cannot be weighed in determining whether the delay is excusable, I allude to the details of the mode of forming the new railroad company and attempting to dissolve or abolish the old one; and the various transfers of stocks, bonds and lands, that have been made, together with the dealings of the plaintiff with third parties that have transpired since surrendering the construction contracts.

I suppose all that can be claimed from these facts, is that proof of them will afford more full and perfect means of relief, if it results that the defendant is entitled to relief. But the defendant's case—that is, the question whether he is entitled to relief, rests entirely on facts existing prior to those transactions.

For the purpose of determining whether the delay is excusable, the facts are to be considered as they were developed to the defendant when, on June 24, he resolved to claim affirmative relief in an original suit, in place of setting up the same facts in this suit.

The matters alleged as grounds for this motion, may be reduced to three classes:

The defendant's want of knowledge of some of the important facts,

His absence from the State and the secrecy and artifice of the plaintiffs,

And his want of means and consequent inability to secure the aid of counsel.

There are very many matters mentioned in the exhibits, and unknown to Mr. Elliot until recently, which are claimed in argument as being facts necessary to the defendant's claim of affirmative relief. Many of them are matters of detail not necessary to be mentioned in the pleadings, although material as evidence. Others go to show what kind or extent of relief should be had, if the defense is maintained. But of some, it is claimed, a knowledge was

indispensable. Prominent among these, is the circumstance that about the time of the commencement of this suit, or perhaps before, Mr. Holladay, or the firm of Ben. Holladay & Co., obtained $800,000 or $1,000,000 by means of railroad bonds in the hands of the firm, out of which Holladay was reimbursed for all the advances he had made to Ben. Holladay & Co.

If I correctly understand the position taken, it is that if Mr. Elliott had known that fact, he would have had reason to know or believe that his interests in the firm of Ben. Holladay & Co. were greatly enhanced in value, and to believe that, upon an accounting, there would have been a large balance in his favor, and that that knowledge would have been a reason for applying for affirmative relief which he would then have acted upon. The force of this discovery, as an excuse for not setting up an affirmative defense, must rest on the assumption that Mr. Elliott, for want of this knowledge, was induced to believe that his interest in the firm of Ben. Holladay & Co. was of little value; and induced for a time to abandon the idea of seeking to retain it, or of seeking to obtain affirmative relief. His right to an accounting, and to his distributive share of the assets, or his right to be reinstated, did not depend on the questions whether the firm owed Mr. Holladay or whether he was indebted to the firm. And I cannot see that a want of this knowledge was a reason for not setting up a claim for affirmative relief by cross-bill, unless the defendant was made to believe his interest was not of sufficient value to warrant that course. But counsel have not taken the position, and do not suggest that he has ever thought of such abandonment of the assets, and of course Mr. Elliott could not claim that he was misled or deceived so as to be of such opinion for any considerable time, for, in his complaint of June 24th, he places a very considerable estimate on his interest in the firm, and states his damages at $2,000,000.

It is not necessary to go into the subject whether the assets of Ben. Holladay & Co. are to be considered greatly increased by the firm having obtained cash to be expended in their enterprise, through a pledge of bonds held by them,

together with the note of one of the firm or of the whole firm, inasmuch as the right to an accounting does not depend on the question whether the amount of assets is great or small or upon whether they have increased or diminished. And as to the propriety of the act of obtaining the money, if it was fairly obtained for the business of the firm including reimbursing individual members for advances made by them, it would be a fruitless attempt at self-deception for the court or the parties to ignore the fact that in all such cases the bonds are made by the corporation and obtained by contractors expressly for the purpose of raising money by pledging or by selling the bonds. It cannot be doubted Mr. Elliott contemplated some transaction similar to that which was effected by Mr. Holladay, if the members of the firm had continued to co-operate; and he probably would have approved of this if no dispute had occurred between the members of the firm. This is not a matter like that of breaking up the partnership, that goes to the gist of the case.

It may be a very important fact on the question of the kind or amount of relief to which the defendant may be found entitled, but at the most it is a mere transfer of one kind of assets into another kind, and I cannot think ignorance of it goes far as an excuse for the delay in offering the proposed cross-bill.

An inspection of the complaint filed by Mr. Elliott will disclose that Mr. Elliott had such knowledge as enabled his counsel to draft a sufficient pleading to admit this fact in evidence, without its being necessary he should know of this particular transaction.

Many of these facts, relied on as newly discovered, are of a class which are treated in practice as but evidence not required to be set forth in the pleadings. I cannot recall one of the circumstances occurring prior to the filing of Mr. Elliott's complaint in June last, but could be introduced in evidence under the allegations of that complaint. Or if the same allegations of fact had been set forth as an answer in this case, I think there are none of the pertinent facts set up in the exhibits, as occurring prior to that time that

would be admissible under the proposed amended answer, and not admissible under the allegations of the complaint filed by Mr. Elliott in June, 1870.

Whether we take the literal reading of the code, or pursue the practice that formerly prevailed in courts of chancery, the rule is that: "A general statement of the matter of fact is sufficient, and it is not necessary to charge minutely all the circumstances which may conduce to prove the general charge, for these circumstances are matters of evidence, which need not be charged in order to let them in as proofs." (Story Eq. Pl. s. 28.)

In that complaint the defendant set up the attempt to form a new railroad company and to dissolve the old one, the cancelling of the construction contracts, and the issuing of bonds by the new company and threatening to sell them. He thus laid the foundation for evidence of all the transactions of the parties that are pertinent up to the sale of the bonds of the Oregon and California Railroad Company. If the same allegations contained in Mr. Elliott's complaint had been set forth in the answer, the proposition to add a supplemental answer would have been very different from that which is now made.

The absence of Mr. Elliott can hardly be urged; he was here and verified his complaint in June, 1870; and what he has urged as unfair dealing, has all transpired within a month past, and it is not necessary for me to refer further to the controverted statements of the parties on that matter.

A third ground of excuse is, that the defendant's means had become exhausted, so that he was unable to meet the expenses of the litigation, and that this embarrassment has been caused in whole or in part by the conduct of the plaintiff.

As to the other expenses, aside from that of employing counsel, there are circumstances tending to support the defendant's position, which would certainly be deserving of great consideration if the necessity of meeting such other expenses had caused the delay, but that is not claimed.

So far as relates to the defendant's inability to employ

counsel, the record of the court and the theory of the law are conclusively against this excuse. The records of the court show that the defendant had the fortune to secure the services of counsel in time for all the purposes of the case, and the court cannot but know that they are men able and skilled in their profession. And the law will not tolerate the position that counsel can or will place themselves on the record as such, and afterwards permit the excuse here urged to be true in point of fact.

If this motion had been made before the case was referred, or even before the parties commenced taking evidence, the proposition would present less difficulty.

It was said in argument that the defendant's request was merely asking to be heard, and the subject was treated, to some extent, as if denying this motion was equivalent to turning the defendant out of court without a hearing. But this is not the case. If the defendant is entitled to affirmative relief, he can still proceed to obtain it. I have reason to suppose that in the earlier proceedings in this case, it was the opinion of counsel that an original suit was the safer or better course for the defendant. And I certainly am no way confident but that it is more economical and better for all parties to first try the issues and determine the questions that form the gist of the controversy, that is, the right and the wrong of the attempt to dissolve the firm of Ben. Holladay & Co., before going into the extensive investigations suggested in the proposed amendment.

I have not thought it necessary to investigate the questions raised as to the pendency of other suits, and the bearing that they should have on this application.

Granting this motion would necessarily cause more or less delay, would probably necessitate a re-examination of witnesses to some extent, and would put it in the power of either party to cause as much delay as would result ordinarily from granting a continuance. If we compare the defendant's showing on the subject of diligence, or of excusing the want of it, with that which is required to procure a continuance, I think it lacks much of bearing that test.

I do not think the facts justify granting the motion.